[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter comes before the court as a hearing in damages for which the plaintiff seeks to recover for losses resulting from a breach of a lease agreement (Exhibit 1). The basic facts are not in dispute. The plaintiff, landlord, leased to the defendant, tenant, one store (store #3) of a nine unit commercial complex, commencing November 1, 1990 and ending April 30, 1996. On or about August of 1991, the tenant defaulted on the payment of rent and thereafter failed to make any future rental payments in accordance with the terms of the lease. The plaintiff made efforts to lease the premises formerly occupied by the defendant and in April 1992 was able to secure a new tenant who leased the defendant's old space (Store #3), and two additional stores, #4 and #5, with rental to commence in July of 1992. Although it is not clear when the defendant closed her business, she did testify that she did not remove her belongings until prior to April 1992 when she moved out all of her property and surrendered her keys at that time. The new lease agreement encompassing stores #3, #4 and #5 (plaintiff's Exhibit #3) was to commence on July 1992 and terminate on July 30, 1995.
The plaintiff's claims for damages are as follows: loss of rental income from date of default, August 1991 to date of "new" lease, July 1, 1992, $13,698.41; real estate commission paid in connection with the defendant's lease $3,773.00; real estate commission paid in connection with the new lease $1,620.85; miscellaneous utility bills $271.51; attorney's fees $2,759.60 ; claim for damages from July 1, 1992 through April 1996 for the difference between the rent due under the lease with the defendant and the anticipated rent with the new tenant an amount computed as per plaintiff's Exhibit 2, for a total of $18,081.66.
The court finds that as of July 1, 1992, the plaintiff terminated the defendant's tenancy. Prior to that date, the plaintiff is entitled to recover rent due under the terms of the lease, and hence, its claim of $13,698.41 is proper. Rokalor, Inc. v. Connecticut Eating Enterprises, Inc., 18 Conn. App. 384, CT Page 11634 388. After July 1, when the landlord terminated the tenancy, the claim for damages for losses suffered by reason of the defendant's breach properly included its claim for attorney's fees $2,759.60, real estate commission for the new lease $1,620.85, utility bills of $271.51. Id. at page 389. Although the plaintiff, in its trial brief, indicates that he would withdraw his claim for commission paid in connection with the defendant's lease, if in fact, he was successful in recovering damages for loss of rental income after July 1, 1992, the court will consider this claim, since it does not intend to award damages for said loss claimed to have occurred after July 1, 1992. Although the Court does not feel that this is a proper claim pursuant to Paragraph 20 of the lease, the court does feel, however, that this claim for said loss did result from a breach of the defendant's contract, and in order to restore the plaintiff to the same position he would have been in had the contract been performed, he shall be entitled to the reimbursement of this commission.
The plaintiff's final claim for damages is for the loss resulting from the difference of anticipated rental income in accordance with the defendant's lease and the rental income paid and anticipated in connection with the new lease, after July 1, 1992. The plaintiff has calculated this loss in accordance with its Exhibit #2. The plaintiff has made these calculations giving the defendant credit for one-third of the anticipated rental income, since the new lease encompasses three stores, and although the original term of the new lease terminates prior to the date of the termination of the defendant's lease, the plaintiff has assumed that the new lease would be extended to coincide with the termination date of the old lease. The plaintiff argues that it is entitled to this claim under Section 20 of the defendant's lease (Exhibit 2). Pursuant to that paragraph, it has the right to terminate the right of possession, which it did . . . "as the agent of the tenant or otherwise and apply the rent under the re-leased premises to the rent due under the instant lease." Unfortunately, in this case, the plaintiff did not act as the agent of the tenant in reletting the demised premises since the plaintiff leased an entirely different premises (Stores #3, #4 and #5) to the new tenant. The defendant here could only relet Store #3, and had no authority to lease Stores #3, #4 and #5. Consequently, the plaintiff did not relet the same demised premises (Store #3) and did not act as the agent of the tenant. Although the plaintiff testified that the rental in the new lease is based on a square footage, and the new stores in the new lease were of the same size, there is nothing in the new lease that would indicate rental CT Page 11635 based on square footage, but, in fact, the lease calls for lump sum annual and monthly rental. (Plaintiff's Exhibit 3, Paragraph 3)
Although our Appellate Courts have not specifically dealt with this unusual factual situation, the defendant's attorney has pointed to a decision of the Supreme Court of Michigan, which has dealt with a factual situation surprisingly similar to the facts presented here. Lafayette Building Company v. Continental Bank,246 N.W. 53. In that case, the defendant leasing Store #3 defaulted in its lease and the plaintiff landlord regained possession and leased store #3 and store #2 to a new tenant. In that case, the new tenant cancelled its lease after a few months of occupancy and the plaintiff landlord attempted to collect damages based on the loss of rent after the new tenant's cancellation to the termination of the original lease. The lease in the Lafayette case provided as did the lease in the instant case that upon default, the plaintiff could take possession and "relet said premises as agent of the lessee and receive the rent and hold the lessee responsible for any deficiency. Like the instant case, the lease in Lafayette contained no allocation of rent to each individual store. The court held in Lafayette that "The character of the premises leased to the defendant was changed by the removal of the partition and the joining of the two stores into one.", and that said premises was rented as "one occupancy and one lease and for one rent.", supra, page 55, as was the situation in the instant matter. The court in Lafayette stated that the lease "was an act of the plaintiff, not as agent of the defendant but as proprietor of both stores, acting for itself and assuming complete control of the premises in its own right and established acceptance of surrender by operation of law." Supra, page 55.
The court finds that in the instant matter, the plaintiff accepted surrender of the premises on July 1, 1992, and acted for itself and not as the defendant's agent, and therefore, is not entitled to the difference in rents as claimed. Therefore, the plaintiff's claim for $18,081.66 is denied.
The plaintiff has established damages as against the defendant; back rent of $13,698.41 that is rent due and owing through June of 1992; an amount equivalent to the commissions paid for the old and new lease in the total amount of $5,593.85; attorney's fees and costs in the amount of $2,759.60, and miscellaneous utility bills in the amount of $271.51. Judgement CT Page 11636 will enter on behalf of the plaintiff in the amount of $22,323.37.
PELLEGRINO, J.